IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00727-CMA-MEH

DELISA HAMILTON-MATTHEWS,

    Plaintiff,

v.

GEO CORRECTIONS AND DETENTION, LLC,

    Defendant.

---

## RECOMMENDATION ON DEFENDANT'S PARTIAL MOTION TO DISMISS

---

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court is Defendant's Motion for Partial Dismissal [filed April 29, 2015; docket #7]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1(c), the Motion has been referred to this Court for recommendation. (Docket #13.) The Motion is fully briefed, and the Court finds oral argument will not assist in its adjudication. Based upon the record herein and for the reasons that follow, the Court RECOMMENDS that Defendant's Motion be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after

# BACKGROUND

**I.     Statement of Facts**

The following are factual allegations made by Plaintiff in her Complaint and offered by Defendant for jurisdictional analysis. These allegations are taken as true under Fed. R. Civ. P. 12(b)(1) pursuant to *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).

Plaintiff Delisa Hamilton-Matthews alleges she began working for GEO Corrections and Detention, LLC ("GEO") on February 20, 2002, as a full-time detention officer. (Complaint, docket #1 at 2.) She held various positions including field training officer, shift supervisor, and transportation lieutenant/supervisor between that time and 2007. (*Id*.) As transportation lieutenant, she supervised between 15 and 20 people and handled scheduling, dispatching runs, training employees, and other various duties. (*Id*.) Plaintiff consistently received positive reviews, and GEO selected her as the "Aurora/I.C.E. Processing Center's Supervisor of the Year for 2008." (*Id*. at 2-3.) In 2011, GEO rated her performance as "above expectations," noting Plaintiff "continues to impress her supervisors with her work ethics and professionalism." (*Id*. at 3.) She earned $33.00 an hour as a transportation lieutenant and worked more than 80 salary hours per pay period. (*Id*.)

On or about March 5, 2013, Major Lori Reeves assigned Plaintiff to monitor radio traffic at the Aurora facility despite Plaintiff expressing discomfort with the assignment. (*Id*.) Plaintiff on or about March 5, 2013, submitted a memorandum to Warden Choate[2] and Assistant Warden Dawn

---

being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2]No first name is provided for Warden Choate in any of the briefs.

Ceja saying she did not feel comfortable with the assignment because she had not been trained in at least five years for the duty assigned. (*Id.*)

On or about March 6, 2013, Reeves took Plaintiff to a meeting with Ceja, where Plaintiff indicated she did not want to discuss the events of the day before with Reeves present. (*Id.*) At the meeting, Ceja said Plaintiff was being "borderline insubordinate." (*Id.* at 4.) After the meeting, Plaintiff was told to get her personal belongings, escorted to the front door, sent home for the rest of the day, and told not to return until she heard from the warden. (*Id.*) On March 7, 2013, Plaintiff called GEO's Human Resources Office to determine when she could return to work and was informed she had been placed on paid administrative leave. (*Id.*) On or about March 8, 2013, Plaintiff called GEO's third-party telephone hotline to file a formal complaint. (*Id.*) Approximately 10 days later, GEO demoted Plaintiff to detention officer for "insubordination" and reduced her salary to $25.02 per hour; GEO also assigned Plaintiff to the "graveyard shift" around this time. (*Id.*)

Plaintiff alleges GEO did not fully investigate the circumstances leading to her demotion by "failing to discuss the March 6, 2013 meeting with Plaintiff prior to her demotion." (*Id.*) A Caucasian male, Dale Daisley, replaced Plaintiff as acting transportation manager. (*Id.*) On or about March 18, 2013, Plaintiff filed an Employee Disciplinary Appeal regarding her demotion, claiming Choate, Reeves and Ceja treated her unprofessionally. (*Id.*) Choate filed a rebuttal response, to which Plaintiff filed a rebuttal on or about March 26, 2013. (*Id.* at 5.) Western Region Vice President James Black filed a regional response, to which Plaintiff filed a response on or about April

2, 2013.³ (*Id.*) Plaintiff then submitted in July 2013 an employee complaint to Vice President Black regarding racial discrimination in the workplace. (*Id.*) In August 2013, Plaintiff filed a complaint letter with Choate regarding her demotion. (*Id.*) Plaintiff asserts her discipline was "significantly harsher than other GEO employees who committed work violations." (*Id.*)

## II.     Procedural History

On April 1, 2013, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission of the United States ("EEOC"), checking the boxes for race, color, sex, and age discrimination but not checking the box for retaliation. (Docket #7-2 at 3.) On June 20, 2014, Plaintiff amended her EEOC charge, this time checking the box indicating retaliation. (*Id.* at 3.) The EEOC on January 7, 2015, issued Plaintiff a right-to-sue letter. (Docket #7-3 at 2.)

On April 8, 2015, Plaintiff initiated this action *pro se* by filing a Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e-5g) *et seq.* (Complaint, docket #1.) Plaintiff's Title VII claims are for discriminatory or unfair employment practice and retaliation. (*Id.* at 5-6.) On April 29, 2015, Defendant filed its Partial Motion to Dismiss arguing the retaliation claim should be dismissed for failure to exhaust administrative remedies [docket #7] and providing exhibits of Plaintiff's initial and amended filings with the EEOC and the EEOC right-to-sue letter [dockets ## 7-1, 7-2, 7-3.] The matter is now fully briefed, and the Court is sufficiently advised.

## LEGAL STANDARDS

### I.     Dismissal Pursuant to Rule 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the

---

³Plaintiff's Complaint uses 2014 for this date, which the Court reasonably assumes is error given the surrounding facts and dates indicating 2013.

merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Kennedy v. Lubar*, 273 F.3d 1293, 1302 (10th Cir. 2001) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). Here, Defendant's Motion goes beyond the allegations contained in the Complaint to factually attack this Court's subject matter jurisdiction and includes the following exhibits that go beyond the pleadings: Plaintiff's initial EEOC charge [docket #7-1 at 2-3]; Plaintiff's amended EEOC charge [docket #7-2 at 2-3]; and Plaintiff's right-to-sue letter from the EEOC [docket #7-3 at 2]. In the Tenth Circuit, failure to exhaust administrative remedies is a bar to subject matter jurisdiction in Title VII cases. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) ("[A] plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII – not merely a condition precedent to suit."); *see also DeWalt v. Meredith Corp.*, 288 F. App'x 484, 490 (10th Cir. 2008) (Failure to exhaust administrative remedies ... is a jurisdictional bar to suit.). "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that [] he did exhaust." *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir.2002).

"[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999). However, the Tenth Circuit has held that a 12(b)(1) motion to dismiss may include references to evidence extraneous to the complaint without converting it to a motion for summary judgment. *Zinke v. Slater*, 34 F. App'x 667, 672 (10th Cir. 2002). In review of a defendant's motion to dismiss involving a plaintiff's EEOC filings, courts may properly consider the EEOC documents within the 12(b)(1) motion. *See, e.g.*, *Jones v. Runyon*, 91 F.3d at 1398, 1400 (10th Cir. 1994). Thus, here, the Court will not convert the Motion for Partial Dismissal to a motion for summary judgment and will consider the EEOC documents provided by Defendant.

**II.     Dismissal of a *Pro Se* Plaintiff's Complaint**

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

"A plaintiff must exhaust [her] administrative remedies before bringing suit under Title VII." *Mitchell v. City & Cnty. of Denver*, 112 F. App'x. 662, 666 (10th Cir. 2004) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997)). The purpose behind the requirement of

exhausting a claim with the EEOC is two-fold: "protect[ing] employers by giving them notice of the discrimination claims being brought against them, [and] providing the EEOC with an opportunity to conciliate the claims." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004). The failure to mark the appropriate box on an EEOC form creates the presumption that the plaintiff "is not asserting claims represented by that box." *Jones v. United Parcel Services, Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). However, the Tenth Circuit follows a rule of liberally construing charges of discrimination filed before the EEOC, *see id.*, and the presumption may be rebutted if the conduct in the complaint reasonably would be expected to fall within the scope of the charge. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998). A court must, therefore, consider whether a plaintiff's narrative statement alleges conduct that reasonably would be expected to raise a retaliation claim. *Id.*

The elements of a prima facie case for retaliation under Title VII are: (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the alleged retaliatory action to be materially adverse; and (3) there is a causal connection between the protected activity and the alleged retaliatory action. *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). *Khalik* held that the plaintiff failed to state a retaliation claim where her factual allegations did not establish a "nexus between the person(s) to whom she complained and the person who fired her," and there was "nothing other than sheer speculation to link" the allegedly retaliatory actions "to a discriminatory or retaliatory motive." *Id.* at 1194.

In *Asebedo v. An. State Univ.*, 559 F. App'x 668 (10th Cir. 2014), the plaintiff failed to check the box for retaliation on his EEOC charge, yet his detailed narrative statement allowed the Tenth Circuit to find he had overcome the presumption that he had not made a claim for retaliation, concluding:

> [Plaintiff's] attached narrative mentioned that his supervisor made racially focused remarks, [the employer] investigated, and investigations found that the supervisor had created a hostile work environment. This could be read merely as background to the claim for retaliation [] but for an important point: the narrative concluded by specifically stating that [the employer] had violated Title VII "because it has engaged in discrimination and retaliation against [Plaintiff]." [W]e cannot conclude that the charge was insufficient to put the EEOC and [the employer] on notice that [Plaintiff] was claiming discrimination as well as retaliation.

*Id.* at 672.

In contrast here, Plaintiff's narrative statements in her EEOC charges are void of details indicating Defendant retaliated against Plaintiff based on a protected activity, such as complaining of discriminatory treatment. (*See* dockets ## 7-2, 7-3.) In fact, her narrative statements fail to mention any protected activity. (*Id.*) In her initial EEOC charge, Plaintiff did not check the box for retaliation. (*See* docket #7-2 at 2.) Her narrative on the initial filing includes a recitation of being moved to a new position she did not want, being called "insubordinate," and later being moved to the graveyard shift, but there is no mention of her discussing race, color, sex, or age discrimination to Defendant and being retaliated against as a result. (*Id.*) Meanwhile, Plaintiff checked the box for retaliation on her amended EEOC charge, but the narrative says that the retaliation occurred in response to her filing the initial EEOC complaint [docket #7-2 at 4] – which Plaintiff then failed to mention in her Complaint [see docket #1]. As such, Defendant asserts Plaintiff did not exhaust administrative remedies with regard to the retaliation claim, so that claim must be dismissed. (Motion to Dismiss, docket #7 at 5.)

Plaintiff does not dispute that her EEOC charges are lacking regarding retaliation; instead, she blames the EEOC intake staffer who allegedly "refused to add retaliation to [her] claim," and her attorney at the time who allegedly "did not properly add [her] initial retaliation complaint dating

back to February 2013." (Response, docket #25 at 1.) Blaming the EEOC or an attorney does not change the outcome. *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) ("[T]he [EEOC] charge is not the work of a faceless bureaucrat, leaving victims of discrimination helpless to protect themselves. Complainants are free to draft and file charges on their own, or hire attorneys to do so, and a charge drafted by the EEOC's staff is not filed unless the complainant signs it – as [the plaintiff] did. If she had been dissatisfied with the staff's understanding of her answers, all she had to do was point this out and ask for an addition.") Had Plaintiff not agreed with the contents of the EEOC charges, she should not have signed them. *See* dockets ##7-1 at 3, 7-2 at 3.

> People are free to sign legal documents without reading them, but the documents are binding whether read or not. Any other approach would undermine the validity of the written word and encourage people either to close their eyes (hoping that they can reap the benefits without incurring the costs and risks of the venture) or to come up with hard-to-refute tales of not reading or understanding the documents they sign.

*Novitsky*, 196 F.3d at 702.

The Tenth Circuit has noted that equitable considerations may, at times, support allowing a plaintiff to go forward in Title VII cases when a plaintiff is put "in an untenable position and denied [] a remedy for reasons totally beyond her control." *Hiller v. Oklahoma ex rel. Used Motor Vehicle & Parts Comm'n*, 327 F.3d 1247, 1251 (10th Cir. 2003) (internal citations omitted). There, the plaintiff found herself "in a catch-22 situation," caught between the statutory requirements of the EEOC and the regulations of the U.S. Department of Justice ("DOJ"), the latter of which would not issue her a necessary right-to-sue letter because she had already received one from the EEOC. *Id*. at 1248. Because the plaintiff found herself in a situation beyond her control, the court allowed her Title VII claim to go forward even without the letter from the DOJ, concluding it would be unfair to hold her to the requirement of obtaining the Attorney General's letter in order to proceed with her suit when he categorically refused to give her one. *Id.*

Here, unlike in *Hiller*, Plaintiff had control of her EEOC charges and the decisions to allow them to be filed void of facts that would establish a causal connection between any protected activity and the allegedly retaliatory actions. Therefore, Plaintiff's first EEOC charge fails to overcome the presumption that her claims were limited to the checked box, as its narrative is not reasonably read to include a retaliation claim; meanwhile, her amended EEOC charge similarly fails to provide narrative linking a protected action to retaliatory conduct, making her checking of the box immaterial. *See Gunnell,* 152 F.3d at 1260. Accordingly, the Court finds Plaintiff failed to administratively exhaust her retaliation claim.

## **CONCLUSION**

Plaintiff has failed to demonstrate her EEOC charge of retaliation overcomes the presumption that she did not claim retaliation at the administrative stage. Accordingly, the Court respectfully RECOMMENDS Defendant's Partial Motion to Dismiss [filed April 29, 2015; docket #7] be **granted**.

Entered and dated at Denver, Colorado, this 7th day of August, 2015.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge